UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OCTALUNA, LLC, OCTALUNA II, LLC, OCTALUNA III, LLC, PATRIARCH PARTNERS MANAGEMENT GROUP, LLC, and PATRIARCH PARTNERS AGENCY SERVICES, LLC,<br><br>       Plaintiffs,<br><br> -against-<br><br>RM ACQUISITION, LLC,<br><br>       Defendant. | 20-cv-5540-ALC |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION TO REMAND**

                       SHER TREMONTE LLP
                       90 Broad Street, 23rd Fl.
                       New York, NY 10004
                       (212) 202-2600

*Attorneys for Plaintiffs
Octaluna, LLC, Octaluna II, LLC,
Octaluna III, LLC, Patriarch
Partners Management Group, LLC,
and Patriarch Partners Agency
Services, LLC*

**TABLE OF CONTENTS**

                                                                                                                       **Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.      PLAINTIFFS' CLAIMS DO NOT ARISE IN THE BANKRUPTCY
        PROCEEDINGS .................................................................................................................. 2

        A.      Plaintiffs' Claims Do Not Arise in the Adversary Proceeding ............................... 2

        B.      Plaintiffs' Claims Do Not Require Interpretation of the Settlement Order ............ 5

II.     PLAINTIFFS' CLAIMS ARE NOT RELATED TO THE BANKRUPTCY
        PROCEEDINGS .................................................................................................................. 7

III.    EVEN IF THERE WERE SUBJECT MATTER JURISDICTION, THIS CASE
        SHOULD BE REMANDED ON PERMISSIVE ABSTENTION OR EQUITABLE
        REMAND GROUNDS ....................................................................................................... 8

# **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Adelphia Commc'ns Corp. v. Rigas*,
    2 Civ. 8495 (GBD), 2003 WL 21297258 (S.D.N.Y. June 4, 2003) .................................. 3

*Baker v. Simpson*,
    613 F.3d 346 (2d. Cir. 2010) ........................................................................................ 2, 4

*In re Am. Equities Grp., Inc.*,
    460 B.R. 123 (Bankr. S.D.N.Y. 2011) ............................................................................... 9

*In re New York City Off-Track Betting Corp.*,
    434 B.R. 131 (Bankr. S.D.N.Y. 2010) ............................................................................... 9

*In re Tower Auto., Inc.*,
    356 B.R. 598 (Bankr. S.D.N.Y. 2006) ............................................................................... 7

*In re Wrenn Assocs., Inc.*,
    No. 04-1114-JMD, 2004 WL 1746117 (Bankr. D.N.H. July 26, 2004) ............................ 4

*In re: Beck Indus., Inc.*,
    479 F.2d 410 (2d Cir. 1973) .............................................................................................. 7

*KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*,
    600 B.R. 214 (S.D.N.Y. 2019) .......................................................................................... 2

*Kirshtein v. Balio*,
    199 A.D.2d 777 (3rd Dep't 1993) ..................................................................................... 3

*Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*,
    487 B.R. 158 (S.D.N.Y. 2013) .......................................................................................... 6

*Petrie Retail, Inc.*,
    304 F.3d 223 (2d Cir. 2002) .............................................................................................. 4

*Post Inv'rs LLC v. Gribble*,
    No. 12 CIV. 4479 ALC AJP, 2012 WL 4466619 (S.D.N.Y. Sept. 27, 2012) ................... 3

*Uto v. Job Site Servs., Inc.*,
    444 B.R. 222 (E.D.N.Y. 2011) ......................................................................................... 7

*Winstar Holdings, LLC v. Blackstone Grp. L.P.*,
    No. 07 CIV. 4634 (GEL), 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) ......................... 7

**Statutes**

Section 105 of the Bankruptcy Code, 11 U.S.C. § 105 ................................................................. 6

Section 362 of the Bankruptcy Code, 11 U.S.C. § 362 ................................................................. 6

**PRELIMINARY STATEMENT**

The purported grounds for federal subject matter jurisdiction in the Notice of Removal[1]—e.g. that Plaintiffs' claims implicate the Settlement Order and could interfere with the monetization of the Portfolio Companies—were eviscerated by the Bankruptcy Court's August 4, 2020 ruling rejecting virtually identical arguments by the Zohar Funds.

In an effort to conjure a new basis for bankruptcy jurisdiction, Defendant now attempts to piggyback on an adversary proceeding filed by the Zohar Funds against Plaintiffs. *See* Opposition Brief ("Opp.") at 11-13. Such an attempt should be roundly rejected: Defendant is not a party to that action (nor a party to the Bankruptcy Proceedings), and the question of whether the Zohar Funds might be entitled to any damages against Plaintiffs in the Adversary Proceeding is entirely separate from the question of whether Defendant owes Plaintiffs unpaid tax distributions and unpaid management and agency fees. Nor do the Zohar Funds even have standing to challenge the Plaintiffs' claims against Defendant. Moreover, there is nothing incongruous about the "worst-case scenario" hypothesized by Defendant if remand is granted: that the Plaintiffs will enforce a state court judgment against Defendant that, if and only if the Zohar Funds someday prevail in the Adversary Proceeding, the Zohar Funds may later be able to recover as damages from Plaintiffs.

Defendant also continues to baselessly assert that this case requires the interpretation of the Settlement Order despite the Bankruptcy Court's finding to the contrary. The Bankruptcy Court held that the dispute between Plaintiffs and Defendant can be resolved without interpreting Section 18 of the Settlement Agreement—the only provision that addresses claims against Portfolio Companies—and Defendant has not identified any other part of the Settlement

---

[1]   The abbreviations defined in the initial memorandum of law on this motion are used again herein.

Agreement that is conceivably implicated.

Finally, even if there were subject matter jurisdiction, permissive abstention and equitable remand remain appropriate. Defendant cannot plausibly argue that it would be less efficient for the state court to adjudicate these non-core claims than to have the Bankruptcy Court and District Court decide them in a two-step process. Moreover, the existence of the Adversary Proceeding does not change the fact that Plaintiffs' claims against Defendant have no effect on the Debtors' estates and are best adjudicated in state court.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS DO NOT ARISE IN THE BANKRUPTCY PROCEEDINGS

Defendant concedes that claims "aris[e] in" bankruptcy only "if they would have no existence outside of the bankruptcy." Opp. at 10 (quoting *Baker v. Simpson*, 613 F.3d 346, 350-51 (2d. Cir. 2010); *see also KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*, 600 B.R. 214, 229 (S.D.N.Y. 2019) ("In assessing 'arising in' jurisdiction, courts have . . . applied the 'but-for' test endorsed by the Second Circuit in *Baker*"). Despite this concession, Defendant nevertheless contends that the "arising in" test is somehow met with respect to Plaintiffs' claims. But this is wrong because Plaintiffs' ordinary contract claims do not depend on bankruptcy for their existence.

#### A. Plaintiffs' Claims Do Not Arise in the Adversary Proceeding

Defendant acknowledges that Plaintiffs' claims "would have no existence outside of the bankruptcy" because claims in the Adversary Proceeding might afford a defense against such claims. Opp. at 11. That is absurd. Defendant owes unpaid tax distributions, management fees, and agency fees to Plaintiffs for reasons having nothing to do with the Zohar Funds' bankruptcy proceedings. Defendant has not explained how it would even have standing to raise any defense

2

to these debts based on any claims the Zohar Funds might have against Plaintiffs. *See Kirshtein v. Balio*, 199 A.D.2d 777, 778 (3rd Dep't 1993) (a contractual debtor cannot invoke an independent cause of action that a third party has against the creditor as a defense). Nor has Defendant explained how the Zohar Funds would have standing to challenge any claims on behalf of Defendant. Moreover, even if findings in the Adversary Proceeding could provide Defendant with a complete defense to Plaintiffs' claims, this would still not meet the standard for a core proceeding: Plaintiffs' claims against Defendant would exist even if a bankruptcy had never been filed. *See Post Inv'rs LLC v. Gribble*, No. 12 CIV. 4479 ALC AJP, 2012 WL 4466619, at *4 (S.D.N.Y. Sept. 27, 2012) (Carter, J.) (state law contractual claims were not core proceeding because they "would exist outside of the bankruptcy cases").

Further, despite the obvious existence of Plaintiffs' claims outside of bankruptcy, Defendant argues for "arising in" jurisdiction because Plaintiffs' claims are "uniquely affected" by the Adversary Proceeding. *See* Opp. at 12. However, for a claim to be "uniquely affected" by bankruptcy requires a great deal more than potential relevance to a (hardly plausible) defense, and cases with a much stronger nexus to a debtor's estate have not been found to be "uniquely affected." *See, e.g., Adelphia Commc'ns Corp. v. Rigas*, 2 Civ. 8495 (GBD), 2003 WL 21297258, at *2 (S.D.N.Y. June 4, 2003) (holding that state law claims alleging that defendant fraudulently obtained debtor's property were non-core because they "are not unique to a bankruptcy proceeding, they do not directly affect a core bankruptcy function, nor are they matters which the bankruptcy court would ordinarily be expected to have greater familiarity or expertise").

Defendant further argues that the Plaintiffs' claims "arise in" bankruptcy because the claims could interfere with the monetization of the Portfolio Companies, which is a "core

3

bankruptcy function." That argument makes no sense: it would suggest that any litigation against a company in which a bankruptcy debtor might have some conceivable interest would "arise in" bankruptcy. But that position is contrary to settled law. *See* Pl. Mem. at 10-11. Further, the Bankruptcy Court has held that the parties agreed to a "pay first, fight later" protocol that <u>furthers</u> an efficient monetization process. *See* Aug. 4 Hr'ing Tr. at 86:12-18. Thus, if Plaintiffs were to obtain a judgment against Defendant in state court, which the Zohar Funds might later contest in the Adversary Proceeding, that would be entirely consistent with and not contrary to the agreed-to monetization process. Indeed, Defendant concedes that this is a straightforward way to adjudicate these cases separately, noting that "if Plaintiffs were to succeed on their claims in this action, the Zohar Funds could still prevail in the Adversary Proceeding and claw back any damages obtained by Plaintiffs." Opp. at 12 n.9.

Nor do any of the cases cited by Defendant support its dubious argument that this is a core proceeding simply because the claims have some conceivable connection to an adversary proceeding. *See Baker v. Simpson*, 613 F.3d 346, 348 (2d Cir. 2010) (finding "arising in" jurisdiction over malpractice claims against court-appointed attorney in bankruptcy proceeding because those claims "inevitably involve[ ] the nature of the services performed for" the bankruptcy estate and "cannot stand alone."); *Petrie Retail, Inc*., 304 F.3d 223, 231 (2d Cir. 2002) (finding "arising in" jurisdiction because plaintiff's claim was "based on rights established in [a bankruptcy] sale order" and "involved excluded liabilities as defined in the sale order"); *In re Wrenn Assocs., Inc.*, No. 04-1114-JMD, 2004 WL 1746117, at *4 (Bankr. D.N.H. July 26, 2004) (subcontractor's claim for a mechanic's lien against department store was core proceeding because the department store's liability could not be determined under New Hampshire law without adjudicating liability of the general contractor debtor). Unlike each of these cases,

4

Plaintiffs' claims against Defendant plainly exist independent of the Bankruptcy Proceedings and can be resolved entirely without regard to those proceedings.

### B. Plaintiffs' Claims Do Not Require Interpretation of the Settlement Order

Defendant continues to argue, incorrectly, that Plaintiffs' claims cannot be adjudicated without interpreting the Settlement Order. *See* Opp. § II.A.2. But only one provision in the Settlement Agreement, Paragraph 18, addresses Plaintiffs' claims against the Portfolio Companies, and the Bankruptcy Court has held that this provision is not implicated in these claims. *See* Aug. 4 Hr'ing Tr. at 85:20-86:6. Defendant now argues that Paragraph 2 of the Settlement Agreement, which even the Zohar Funds did not cite in seeking a stay, is somehow implicated by this plain-vanilla contract action. *See* Opp. at 13. Putting aside the fact that Defendant is not a party to the Settlement Agreement and cannot enforce that agreement's terms, even a cursory review of this provision shows that Plaintiffs' claims against Defendant do not raise any issue under this paragraph.

First, regarding Paragraph 2, that paragraph provides that Lynn Tilton will bear certain tax responsibilities in connection with the Portfolio Companies.[2] But Defendant does not explain how Plaintiffs' claims might implicate this paragraph. Instead, Defendant's position seems to be nothing more than a completely superficial argument that the Bankruptcy Court has jurisdiction over the claims regarding tax distributions because Paragraph 2 mentions the word "tax." This is

---

[2] Paragraph 2 reads in relevant part:

> … Tilton shall remain the director of each of the Debtors (until such time as she is no longer the taxpayer for the Debtors, the Group B Portfolio Companies, and Group A Portfolio Companies) solely for the purpose of exercising (and having no other rights or authority) to (a) manage the tax liability and reporting of the Debtors and the Group B Portfolio Companies, (b) manage the tax reporting of the Group A Portfolio Companies . . . .  In that capacity, Tilton shall continue to bear the tax liability associated with ownership of the Debtors, the Group B Portfolio Companies, and the Group A Portfolio Companies . . .

obviously wrong.

Unable to credibly argue that Plaintiffs' claims are forbidden under the Settlement Agreement (to which Defendant is not a party), Defendant hedges its position with the far-fetched argument that these claims are "rights created" under the Settlement Agreement and therefore require its interpretation. *See* Opp. at 13. But Plaintiffs' claims are based on integrated free-standing contracts that neither require nor allow reference to extrinsic evidence. The fact that the Settlement Order expressly allows tax distributions does not mean that Plaintiffs' claims depend upon it for their existence or enforceability.[3]

*Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P*., 487 B.R. 158 (S.D.N.Y. 2013), relied heavily upon by Defendant, undermines rather than supports Defendant's argument. In *Lothian*, the plaintiff *was* able to successfully obtain summary judgment on a contractual claim in state court—only its other tort claims challenging a bankruptcy sale "arose in" bankruptcy. *See id*. at 159 (state court ruling that "Plaintiffs could recover based on the promissory note at issue in the initial motion for summary judgment" remains undisturbed).

Defendant also attempts to make something of the Bankruptcy Court's off-the-cuff dicta that, even though it was declining to stay the case under Paragraph 18 of the Settlement Order, the case could hypothetically be stayed under some unspecified application under Sections 105 or 362 of the Bankruptcy Code. *See* Opp. at 9. However, Section 105 merely authorizes courts in general terms to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of' the Bankruptcy Code." 11 U.S.C. § 105. Section 362 creates the automatic stay of claims against debtors, and this stay is extended to non-debtors only in "unusual

---

[3] Plaintiffs make the related argument that the Bankruptcy Court has inherent jurisdiction over this action because it requires the interpretation of its orders. *See* Opp. § II.C. Because no such interpretation is required, this argument likewise fails.

6

circumstances," absent here, that are "typically found only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Uto v. Job Site Servs., Inc.*, 444 B.R. 222, 224 (E.D.N.Y. 2011). Defendant does not articulate any reason to stay this case that adds anything to the failed arguments already made by the Zohar Funds on their Motion to Stay.[4]

## II. PLAINTIFFS' CLAIMS ARE NOT RELATED TO THE BANKRUPTCY PROCEEDINGS

Defendant contends that this lawsuit is related to the Bankruptcy Proceedings because it may "dilute[] the . . . estate" of the Zohar Funds, which holds an intangible property interest in the Portfolio Companies. Opp. at 15. However, Defendant cannot refute the case law holding that a debtor's subsidiary's assets are not estate assets, and therefore claims brought against the assets of a company owned by a debtor (such as Plaintiffs' claims here) provide no basis for "related to" jurisdiction. *See* Pl. Memo of Law at 12.[5]

Recognizing that the Zohar Funds' ownership interest in the Portfolio Companies is insufficient, Defendant attempts to fall back on the argument that Plaintiffs' claims could affect the estate by impacting the monetization of the Portfolio Companies. However, this argument has been considered and rejected by the Bankruptcy Court, which held that the parties have agreed to a "pay first fight later" protocol that furthers an efficient monetization process. *See*

---

[4]   Late last night, a group of Portfolio Companies (including Libertas) filed a motion to stay in the Bankruptcy Proceedings based on the same meritless arguments it has raised here.

[5]   Defendant questions whether *In re: Beck Indus., Inc.*, 479 F.2d 410, 415 (2d Cir. 1973) remains good law on this point after the 1978 and 1984 revisions of the Bankruptcy Code. *See* Opp. at 17. As the numerous recent cases that continue to follow its holding attest, it does. *See In re Tower Auto., Inc.*, 356 B.R. 598, 601 (Bankr. S.D.N.Y. 2006) (citing cases for proposition that *Beck* remains good law).

Aug. 4 Hr'ing Tr. at 86:12-18.[6]

Defendant argues that Plaintiffs' claims could concern a potential buyer of the Portfolio Companies. *See* Opp. at 16-17. But Defendant does not explain how or why these purported buyer concerns would be alleviated by adjudicating Plaintiffs' claims in the bankruptcy court. These liabilities exist either way and will not be addressed any sooner through removal and transfer. There is also no merit to Defendant's suggestion that these claims might be mooted by any finding in the Adversary Proceeding. Indeed, there is no reasonable chance that action—which involves a complaint more than 100 pages long with 33 causes of action and numerous other parties—will be resolved before the claims in this case, particularly since defendants have not even filed a response to the complaint yet.

Finally, Defendant argues that the Zohar Funds' Rule 2004 Examination somehow brings this case within the ambit of bankruptcy jurisdiction. *See* Opp at 14, n.8. However, this contradicts the Zohar Funds' own categorization of that discovery application as narrowly "targeted" to historical tax documents "immediately necessary for the Debtors to understand the nature and extent of their current tax reporting obligations and liabilities, if any, and otherwise prepare and file their tax returns." *See* Dkt. #1-7 ¶ 6. Plaintiffs' claims to enforce for unpaid tax distributions—which are for <u>past</u> tax liabilities that Plaintiffs (not the Zohar Funds) actually incurred—have no "conceivable effect" on the Zohar Funds' current tax obligations or any other aspect of the estate.

### III.   EVEN IF THERE WERE SUBJECT MATTER JURISDICTION, THIS CASE SHOULD BE REMANDED ON PERMISSIVE ABSTENTION OR EQUITABLE REMAND GROUNDS

---

[6]   Defendant's reliance on *Winstar Holdings, LLC v. Blackstone Grp. L.P.*, No. 07 CIV. 4634 (GEL), 2007 WL 4323003, at *1 (S.D.N.Y. Dec. 10, 2007), is misplaced because the claims there directly challenged a bankruptcy sale order, which the claims here do not. The claim in *Winstar* was that the debtor and its agents fraudulently induced a bankruptcy court-ordered sale of the debtor's assets. *Id*. at *1.

The Opposition fails to refute Plaintiffs' arguments in favor of equitable remand and permissive abstention.

Judicial economy favors remand. This case can be adjudicated in state court before the Bankruptcy Court will get to it, let alone the District Court that would have to enter judgment on this non-core claim.[7] Defendant feigns interest in the efficiency of a bankruptcy proceeding in which it is neither debtor nor creditor, but it is instead attempting to delay the inevitable judgment against it.

Comity favors state law matters being resolved in state court where, as here, there is no strong countervailing reason to do otherwise. This is even more the case where, as here, the Plaintiffs are New York citizens seeking to exercise rights pursuant to contracts governed by New York law. *See In re Am. Equities Grp., Inc*., 460 B.R. 123, 130 (Bankr. S.D.N.Y. 2011) ("Comity focuses on the state's interest in developing its law and applying its law to its citizens").

Defendant has failed to refute that the relationship between this action and the main bankruptcy case is remote and highly attenuated. The purported connections that Defendant asserts—to the Adversary Proceeding, the monetization of the Portfolio Companies, and the Rule 2004 Examination—are, at best, only tangentially related to Plaintiffs' contract claims and do nothing to preclude their separate adjudication. *See supra* §§ I-II.

The admitted absence of any non-bankruptcy jurisdictional basis favors abstention. *See In re New York City Off-Track Betting Corp*., 434 B.R. 131, 152 (Bankr. S.D.N.Y. 2010) (absence of federal question or diversity jurisdiction weighs in favor of remand).

Finally, Defendant's assertion that Plaintiffs have engaged in forum shopping is wholly

---

[7]   Defendant argues that Plaintiffs could consent to the Bankruptcy Court issuing a final order, but they would be under no obligation to waive their rights to be heard before an Article III court if remand is denied.

9

without merit. *See* Opp. at 21. Plaintiffs filed this action in the New York forum selected in the relevant contracts. In this regard, Defendant is the one forum shopping, trying to duck an efficient resolution in state court of claims to which Defendant has no defense.

Dated:   New York, New York
         September 10, 2020

>                             SHER TREMONTE LLP
>
>                             By: */s/ Theresa Trzaskoma*
>                                     Theresa Trzaskoma
>                                     Mark Cuccaro
>                                     Jennifer X. Luo
>                             90 Broad Street, 23rd Fl.
>                             New York, NY 10004
>                             (212) 202-2600
>                             ttrzaskoma@shertremonte.com
>                             *Attorneys for Plaintiffs Octaluna, LLC,*
>                             *Octaluna II, LLC, Octaluna III, LLC,*
>                             *Patriarch Partners Management Group,*
>                             *LLC, and Patriarch Partners Agency*
>                             *Services, LLC*